**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19-CV-00414-GNS-RSE**

**SHAWN J. SCOTT**                                                                                              **PLAINTIFF**

**VS.**

**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**
Andrew Saul[1]

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND RECOMMENDATION**

The Commissioner of Social Security denied Shawn Scott's application for disability insurance benefits. Scott, *pro se*, seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Scott (DN 14) and the Commissioner (DN 19) have filed a Fact and Law Summary. The District Judge has referred this case to the undersigned United States Magistrate Judge (DN 12) to review the Fact and Law Summaries and submit a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B).

I. FINDINGS OF FACT

Shawn J. Scott ("Scott") is 54 years old and lives with his wife and three children. (Tr. 93). Scott has a tenth-grade education and past work experience as a fast-food worker, fast-food services manager, laborer, security guard, pest control worker/helper, industrial truck operator, customer service representative, host, and management trainee. (Tr. 132-135). In 2006, Scott claims he was assaulted and suffered a head injury. (Tr. 115). This injury resulted in a vitamin D

---

[1] Andrew Saul is now the Commissioner of Social Security and is substituted as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

deficiency, which caused chronic headaches, blackouts, and negatively affected his ability to work. (Tr. 114-115). Scott has tried several methods of medication therapy and pain relief, including injections for the migraines and knee pain. (Tr. 114-119). Due to the blackout spells and pain in his hands and knees, Scott was restricted from engaging in strenuous activity and has limited his household chores to vacuuming. (Tr. 116, 144-145).

Scott applied for disability insurance benefits ("DIB") from the Social Security Administration under Title II, claiming he became disabled on July 7, 2014, (Tr. 266), as a result of headaches, dizziness, weakness, disorientation, and seizures. (Tr. 270). His application was denied initially (Tr. 161) and again on reconsideration (Tr. 176). Administrative Law Judge Candace A. McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky, on January 23, 2018. (Tr. 89). Scott attended the hearing with his attorney. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ McDaniel issued an unfavorable decision on August 7, 2018. (Tr. 67).

ALJ McDaniel applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Scott has not engaged in substantial gainful activity since July 7, 2014, the alleged onset date. (Tr. 73). Second, Scott has the following severe impairments: joint pain due to rheumatoid arthritis, migraine headache, not intractable, depression and posttraumatic stress disorder. (Tr. 73). Third, none of Scott's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Between the third and fourth steps, ALJ McDaniel found Scott has the residual functional capacity ("RFC") to perform "light work" as defined in 20 CFR 404.1567(b), with the following limitations:

> [H]e would require the ability to alternate at 30 or 60 minute intervals taking no more than 1-2 minutes to change position without leaving the work space. The claimant can occasionally reach overhead with both the right and left arms, and occasionally push and pull with both arms. All other reaching can be performed frequently with both arms. Handling, fingering and feeling can also be performed frequently with both hands. He cannot climb ladders, ropes or scaffolds or climb stairs. The claimant can occasionally climb ramp and can occasionally stoop, kneel, crouch and crawl. The claimant can use both feet frequently for foot pedals. There would be no concentrated exposure to dust, fumes, gases and pulmonary irritants or to temperature extremes involving the heat, cold, humidity and wetness. There would be no hazards including unprotected heights, operating dangerous machinery, fire or electricity or large bodies of water. He can understand, remember and carry out simple instructions and procedures requiring brief initial learning periods usually 30 days or less. The claimant can interact appropriately with supervisors and coworkers and occasionally with the public. The claimant can sustain attention and concentration for two-hour periods throughout an eight-hour workday and tolerate routine work changes within that setting.

(Tr. 75). Fourth, ALJ McDaniel found Scott could not perform any of his past relevant work. (Tr. 80). Fifth and finally, considering Scott's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 81).

Based on this evaluation, ALJ McDaniel concluded that Scott was not disabled, as defined in the Social Security Act, from July 7, 2014, the alleged onset date, through August 7, 2018, the date of the decision. (Tr. 82). Scott appealed ALJ McDaniel decision. (Tr. 250). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Scott sought judicial review from this Court. (DN 1).

## II. STANDARD OF REVIEW

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial

evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. CONCLUSIONS OF LAW

Scott's one-page Fact and Law Summary lists the following conditions: "mental disabuility [sic] P.T.S.D. PTSDB [sic]; life threating [sic] illness physical; abnormal skeleton disorder caused by reumatoid [sic] arthritis; bone spurs the [sic] cover the entire skeleton." (DN 14 at 1.) Scott also attaches a three paragraph, type-written note to his Fact and Law Summary. (*Id.* at p. 2). As a result, it is not clear to the Court exactly what Scott's contentions are, other than possibly that the aforementioned conditions generally render him disabled and prevent him from working.

Normally, issues addressed in a "perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)) (internal quotation marks omitted). The Court, however, also recognizes that Scott is not represented by counsel in this matter. That being said, it would be "entirely inappropriate for the Court to provide the same level of analysis to Social Security benefits claimants who do provide briefs in support of their claims and those who do not." *Parker v. Comm'r of Soc. Sec.*, No. 5:16 CV 278, 2017 WL 2859801, at *3 (N.D. Ohio May 9, 2017), *report and recommendation adopted Parker v. Comm'r Soc. Sec.*,

4

No. 5:16-CV-278, 2017 WL 2840763 (N.D. Ohio July 3, 2017). This would "create a perverse incentive for Social Security claimants to abstain from arguing in support of their claims." *Id*. The Court therefore shall briefly address the impairments listed in Scott's Fact and Law Summary in turn, concluding that for the reasons set forth below, there is substantial evidence to support the ALJ's decision that the conditions identified by Scott do not render him disabled.

## A. Finding No. 1

In his Fact and Law Summary, Scott first identifies his mental disability as posttraumatic stress disorder ("PTSD)." (DN 14 at p. 1). Because Scott is proceeding *pro se*, the undersigned shall construe this argument as a challenge to ALJ McDaniel's evaluation of his PTSD.

A review of the record reveals that ALJ McDaniel recognized that Scott's PTSD was a severe impairment, considered his treatment history, evaluated the opinion evidence, and limited Scott's RFC accordingly. (Tr. 73-75). For example, ALJ McDaniel acknowledged that Scott was briefly admitted to the hospital for psychosis with acute hallucinations and later diagnosed with PTSD. (Tr. 78) (citing Ex. 9F; 17F at p. 5, 12). Here, Scott admitted to methamphetamine use and the ALJ's decision highlights that Scott had no further episodes of psychosis. (*Id*.). ALJ McDaniel also noted that after June 2017, Scott stopped receiving treatment for his mental impairments and was eventually discharged from the mental health clinic for non-compliance with treatment. (*Id*.) (citing Ex. 17F).

In evaluating the opinion evidence, ALJ McDaniel explained that the opinions of consultative examiner Greg V. Lynch, Ph.D., and state agency psychologists Mary K. Thompson, Ph.D., and Larry Freudenberger, Psy.D., were entitled to significant weight because they were consistent with the limited evidence of mental health treatment and Scott's function report. (Tr. 78-80) (citing Ex. 2A, 4A, 6F). ALJ McDaniel adopted these opinions and concluded that Scott

could remember simple instructions and procedures requiring initial learning periods of 30 days or less and interact frequently with supervisors and peers but only occasionally with the public. (Tr. 80); *see also* (Tr. 75). ALJ McDaniel also concluded that Scott could sustain attention and concentration for two-hour periods throughout an eight-hour workday, as well as adapt to routine work changes and situational conditions with reasonable support and structure. (*Id.*). Because ALJ McDaniel accommodated Scott's limitations in the RFC, (Tr. 75), she properly evaluated Scott's mental impairments.

### B.  Finding No. 2

Scott next lists that he has a life-threatening physical illness resulting from the head injury suffered in 2006. (DN 14 at p. 1-2). He further claims that this injury caused memory problems and severe headaches. (*Id*). A review of the record reveals that these impairments were adequately addressed by the ALJ.

In her decision, ALJ McDaniel acknowledged that Scott reported a history of a head injury in 2006 and complained of headache, dizziness, and syncope. (Tr. 76). However, the ALJ noted that Scott's EEGs were normal, his MRI showed minimal white matter disease without mass, and his CT showed no acute intracranial findings. (Tr. 76-77) (citing Ex. 4F, 10F, 12F). Because doctors could not find the etiology of Scott's headaches, they assessed seizure precautions and ordered a sleep study, which showed obstructive sleep apnea. (Tr. 77) (citing Ex. 12F, 16F). Here, ALJ McDaniel noted that Scott was prescribed medication for headaches but complained that his symptoms would "wax and wane." (*Id.*) (citing Ex. 8F). ALJ McDaniel also highlighted that at the end of 2016, Scott reported that his spells had resolved spontaneously with treatment. (*Id.*) (citing Ex. 12F). The headaches returned in 2017 and the ALJ noted that Scott started Botox injections, which reduced the headaches to one per month. (*Id.*) (citing Ex. 10F, 12 F).

ALJ McDaniel discussed the aforementioned evidence and concluded that although Scott's headaches were severe, such impairment would not prevent him from performing all work activity. (Tr. 73, 77). Rather, ALJ McDaniel explained that Scott's allegations that the migraines caused blackout spells, the treatment was not successful, and claims that he experienced twenty-one headaches per month were not supported by medical evidence. (Tr. 79). Yet, despite evidence in the record demonstrating Scott's improvement, the ALJ declined to adopt the state agency physicians' opinions that Scott could perform work at all exertional levels. (Tr. 80) (citing Ex. 2A, 4A). ALJ McDaniel instead adopted a more restrictive RFC that limited Scott to a range of light work (Tr. 75). ALJ McDaniel also placed restrictions on Scott's ability to perform postural movements and tolerate environmental hazards to account for his blackouts. (Tr. 75, 77). Again, because the ALJ accommodated all of Scott limitations, (Tr. 75, 80), the Court finds no error.

C. Finding No. 3

On December 4, 2018, approximately four months after ALJ McDaniel issued her decision, Scott obtained an x-ray of the thoracic spine showing diffuse idiopathic skeletal hyperostosis ("DISH"). (DN 13). Scott now argues that this impairment causes bone spurs that cover his entire inner skeleton and results in extreme pain. (DN 14 at p. 2). He further claims that the bone spurs were caused by his rheumatoid arthritis. (*Id*.). The Commissioner objects to the submission of this evidence and argues that Scott is not entitled to a sentence six remand based on new evidence. (DN 19).

At the outset, evidence submitted to the Appeals Council or to a reviewing court after the ALJ's decision "cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)); *see also Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007)

(review of the Commissioner's decision is limited to the record made before the ALJ). Rather, the district court can remand the case for further administrative proceedings in light of the evidence pursuant to "sentence six" of 42 U.S.C. § 405(g). *Cline*, 96 F.3d at 148. A "sentence six" remand allows for the consideration of additional evidence only if the plaintiff demonstrates (1) the evidence is "new" and "material" and (2) "good cause" for the failure to present the evidence to the Administrative Law Judge. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster*, 279 F.3d at 357). "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster*, 279 F.3d at 357).

It can be argued that Scott has likely established that his x-ray is "new" evidence because such record post-dates the ALJ's determination. That notwithstanding, Scott cannot prove that this information is "material." For evidence to be considered "material," the claimant must prove the evidence "would likely change the Commissioner's decision." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); Bass, 499 F.3d at 513. This x-ray, however, is not sufficient to persuade the Court that such information would have altered ALJ McDaniel's determination. Moreover, Scott has not clearly requested a sentence six remand, nor has he articulated any argument demonstrating good cause for not having submitted this evidence for the ALJ's consideration or that the evidence is new and material. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014). The undersigned therefore finds that Scott has not met his burden of demonstrating that a sentence six remand is appropriate.

## IV. RECOMMENDATION

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge
United States District Court

September 10, 2020

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:   Plaintiff, *pro se*
          Counsel of Record